**Frederick GERLACH, President, Lake Holiday, Inc., d/b/a Lake Holiday Pool and Park, Respondent,**

v.

**MISSOURI COMMISSION ON HUMAN RIGHTS, Appellant.**

No. 73787.

Missouri Court of Appeals,
Eastern District,
Hillsboro Division.

Nov. 17, 1998.

Jeremiah W. (Jay) Nixon, Atty. Gen., Keith D. Halcomb, Asst. Atty. Gen., Jefferson City, for appellant.

Stanley D. Schnaare, S. Vance Combs, Hillsboro, for respondent.

GARY M. GAERTNER, Presiding Judge.

Appellant, Missouri Commission on Human Rights (the "Commission"), appeals the judgment and order of the Circuit Court of Jefferson County sustaining respondent's, Frederick Gerlach ("Gerlach"), President, Lake Holiday, Inc. d/b/a Lake Holiday Pool and Park ("Lake Holiday"), motion to quash the investigative subpoena duces tecum issued by the Commission. Incidental to this appeal, Lake Holiday filed a motion to dismiss due to the running of the statute of limitations making all issues moot. We deny the motion to dismiss and reverse the trial court's ruling.

On April 14, 1993, Robert Carpenter ("Carpenter"), filed a racial discrimination complaint with the Commission against Lake Holiday. In his complaint, Carpenter alleged on March 14, 1993, Lake Holiday discriminated against him and his family based on their race (African–American), by refusing them admittance due to the unruly conduct of a guest of Carpenter's. Carpenter alleged Lake Holiday did not exclude white patrons who had guests who acted in an unruly manner.

In an effort to investigate Carpenter's claim, the Commission issued an investigative subpoena duces tecum to Lake Holiday on November 22, 1994. The subpoena duces tecum commanded Gerlach to appear personally before the Commission in regard to the investigation of Carpenter's complaint. It further commanded he bring lists, records and information concerning incidents at Lake Holiday which resulted in patrons being barred from the establishment and concerning incidents of unruly behavior by patrons there, as well as the race of those patrons.

On December 13, 1994, Lake Holiday filed a motion to quash subpoena duces tecum in the Circuit Court of Jefferson County, contending that the Commission lacked the authority to issue and enforce a subpoena during an investigation. On January 31, 1997, after the Commission filed its motion in opposition to the motion to quash subpoena duces tecum, and after oral arguments and additional briefing, the trial court sustained the motion to quash. The Commission appealed this ruling, but the appeal was dismissed for lack of a final judgment.[1] The motion court subsequently issued a "Judgment and Order", quashing the Commission's subpoena. The Commission now appeals that judgment.

■ Incidental to this appeal, Lake Holiday filed a motion to dismiss due to the running of the statute of limitations making all issues moot (the "motion"). We deny the motion.

■ The statute of limitations is an affirmative defense. Rule 55.08. Rule 55.08 requires that an affirmative defense "be pleaded in response to a preceding pleading." *Angoff v. Mersman,* 917 S.W.2d 207, 211

---

**1.** *See, Gerlach v. Missouri Com'n on Human* *Rights,* 955 S.W.2d 809 (Mo.App. E.D.1997).

(Mo.App. W.D.1996). A pleading is defined as the "formal allegations by the parties to a lawsuit of their respective claims and defenses, with the intended purpose being to provide notice of what is to be expected at trial." Black's Law Dictionary 1152 (6 th ed.1990). In this case, the Commission has never filed any formal allegations in a lawsuit against Lake Holiday based on Carpenter's complaint. Nevertheless, Lake Holiday raised the affirmative defense of statute of limitations in apparent anticipation of the Commission's filing of formal allegations against it in a future lawsuit. However, "[i]t is premature to render a judgment or opinion on a situation that may never occur." *Local Union 1287 v. Transp. Authority,* 848 S.W.2d 462, 463 (Mo.banc 1993). Therefore, Lake Holiday's motion is premature because the Commission has not and may never file formal allegations in a lawsuit against Lake Holiday. Accordingly, we deny Lake Holiday's motion.

■ We now turn to the merits of the case. In its sole point on appeal, the Commission asserts the motion court erred in quashing the subpoena duces tecum issued by the Commission. In support of its assertion, the Commission contends it has statutory authority to require the production of documents and information during the investigation of discrimination complaints pursuant to RSMo section 213.030.1(7) (1994)[2] of the Missouri Human Rights Act (the "MHRA"). In response, Lake Holiday argues the wording of this statute evidences the legislature's intent to deny the Commission the power to issue a subpoena during its investigations *prior to a hearing.* We agree with the Commission.

The issue we are faced with in this appeal involves statutory interpretation, which is a question of law. *Gordon A. Gundaker v. Real Estate Com'n,* 878 S.W.2d 466, 468 (Mo. App. E.D.1994). Thus, we do not defer to the trial court's conclusions of law; rather, we independently assess the statutory construction. *Id.* at 468–69.

RSMo section 213.030.1(7) grants the Commission the power:

[t]o receive, investigate, initiate, and pass upon complaints alleging discrimination in employment, housing or in places of public accommodations because of race, color, religion, national origin, ancestry, sex, age as it relates to employment, handicap, or familial status as it relates to housing *and to require the production for examination of any books, papers, records, or other materials relating to any matter under investigation[.]* (Emphasis added.)

We have reviewed this issue once before in *Brooks v. Pool–Leffler,* 636 S.W.2d 113 (Mo. App. E.D.1982), where we held the Commission does not have the power to issue an investigative subpoena duces tecum until a valid discrimination complaint has been filed and a notice of hearing is issued based on that complaint. *Id.* at 121–22. However, the particular relevant statute in question in *Brooks* has been legislatively amended since that decision. Nevertheless, a review of the ruling in *Brooks* is necessary to illustrate the subsequent amendment and our interpretation thereof.

In *Brooks,* the Commission was investigating employment practices in the St. Louis electronic media. *Id.* at 115. As part of its investigation, the Commission attempted to gather information from various television and radio stations in the St. Louis area. *Id.* at 115–16. One particular radio station, KSHE, Inc. ("KSHE"), refused to cooperate with any of the Commission's attempts to gather information, in part challenging the Commission's filing of a discrimination complaint on its own volition. *Id.* The Commission then issued an administrative subpoena duces tecum commanding KSHE's vice-president and general manager, Nancy Pool–Leffler, to appear at the Commission's offices with KSHE's employment and personnel records. *Id.* at 116. When KSHE refused to comply with the subpoena, the Commission petitioned the Circuit Court of St. Louis County for an order to enforce the administrative subpoena. *Id.* After a hearing, the circuit court denied the Commission's petition and dismissed the cause without articulating the grounds for its decision. *Id.* The Commission appealed this decision. *Id.*

**2.** All statutory references are to RSMo (1994)     unless otherwise noted.

■ In considering the parameters of the Commission's power to issue an administrative subpoena duces tecum, the *Brooks* court explained administrative agencies do not possess the inherent authority to issue subpoenas. *Id.* at 118–19. Rather, they may only do so as permitted by statute. *Id.* at 119. "This rule is merely a specific application of the general rule that an administrative agency has no more authority than that granted to it by statute." *Id.* However, a statute may expressly or impliedly confer the authority to issue an administrative subpoena. *Id.* The *Brooks* court noted that "[i]mplication of the subpoena power is not proper, however, simply because that power would facilitate the accomplishment of an end the court deems beneficial." *Id.* Only if it necessarily follows from the statute's language may the subpoena power be implied. *Id.* As the *Brooks* court stated,

> [t]he aforementioned rules of construction reveal the complexity of the issue. On the one hand we seek to effectuate the statutory purpose intended by the legislature. On the other, we must temper our judgment in recognition of the fact that it is for the legislature, not the judiciary, to establish the means through which the statutory purpose is to be achieved.

*Id.*

Focusing on the plain language of the statute at issue, the *Brooks* court noted the subpoena power of the Commission is only specifically expressed in RSMo section 296.030(8) (1978), which concerns the hearing stage of a Commission investigation. *Id.* at 120. The court explained that as the Commission's power to subpoena witnesses is conferred along with its power to hold hearings, "it follows that the subpoenaing of witnesses is authorized only in the context of a hearing before a Commission panel or a hearing examiner." *Id.* The *Brooks* court then concluded, "[t]hus, [RSMo section] 296.030(8) authorizes the Commission to issue a subpoena duces tecum only in the hearing stage." *Id.*

In *Brooks,* the Commission argued a general subpoena power is required to accomplish the broad remedial purpose of the statute. *Id.* at 122. In response, the court explained "we are powerless to grant the Commission authority to issue subpoenas where the legislature has so clearly indicated its intent that the Commission not have such authority. If a general subpoena power is necessary, that change in the statute must come from the legislature, not the judiciary." *Id.*

As noted above, *Brooks* is distinguishable from the case at bar though, because the court in *Brooks* construed RSMo section 296.030 (1978). RSMo section 296.030.(7) (1978), which concerned pre-hearing investigations, gave the Commission the power "[t]o receive, investigate, initiate, and pass upon complaints alleging discrimination in employment because of race, creed, color, religion, national origin, sex, ancestry, or handicap[.]" In 1986, the legislature repealed RSMo Chapter 296. However, the legislature incorporated RSMo section 296.030.(7) (1978) into RSMo section 213.030.1(7), which the legislature subsequently amended in 1992. In 1992, the legislature amended subsection 1(7) by providing the Commission additional powers, including, *inter alia,* language that gave the Commission the power "to require the production for examination of any books, papers, records, or other materials relating to any matter under investigation[.]" RSMo section 213.030.1(7). Therefore, because *Brooks* interpreted a statute which has been significantly amended, we are not bound to reach the same conclusion.

We must now determine the meaning of RSMo section 213.030.1(7) in light of the legislature's 1992 amendment. In a recently decided case similar to the case at bar, *Angoff v. M & M Management Corp.,* 897 S.W.2d 649 (Mo.App. W.D.1995), the court was faced with determining whether the Department of Insurance was permitted to issue subpoenas pursuant to RSMo section 374.190, despite the absence of the word "subpoena" in that statute. *Id.* at 652–53. The *M & M Management Corp.* court held the Department of Insurance possesses the implied power to issue subpoenas duces tecum under RSMo section 374.190, which authorizes it to "summon and compel" witnesses and to "require and compel" production of documents during its investigations,

despite the fact the word "subpoena" is not expressly stated in that statute. *Id.* at 654–55.

In light of *M & M Management Corp.*'s holding, a plausible interpretation of the legislature's 1992 amendment to RSMo section 213.030.1(7) is that the legislature intended to effectively overrule that portion of *Brooks* holding the Commission does not have the power to issue an investigative subpoena duces tecum. The 1992 legislative amendment granted the Commission the power "to require the production for examination of any books, papers, records, or other materials relating to any matter under investigation[ ]", even before a notice of hearing is issued based on a discrimination complaint. Like the statute analyzed in *M & M Management Corp.*, although RSMo section 213.030.1(7) does not expressly state the word "subpoena", the legislature, through its 1992 amendment, impliedly granted that power.

■ Furthermore, "[w]hen the legislature has altered an existing statute ... such change is deemed to have an intended effect, and the legislature will not be charged with having done a meaningless act." *State v. Sweeney,* 701 S.W.2d 420, 423 (Mo.banc 1985). Therefore, in our case, when the legislature amended RSMo section 213.030.1(7) in 1992 and gave the Commission the power to "require the production" of books, papers, and records, this change is deemed to have an intended effect. We will not charge the legislature with having done a meaningless act in its amendment. Accordingly, unless we overrule the circuit court's decision, and find the Commission has the power to issue investigative subpoenas duces tecum, the 1992 amendment will be rendered meaningless.

■ In addition, "[t]he primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words used in their plain and ordinary meaning." *Wolff Shoe Co. v. Director of Revenue,* 762 S.W.2d 29, 31 (Mo. banc 1988). Where the language of the statute is clear and not ambiguous, there is no room for construction. *Id.* "In determining

whether the language is clear and unambiguous, the standard is whether the statute's terms are plain and clear to one of ordinary intelligence." *Id.* The ordinary sense of a word is usually derived from the dictionary. *Abrams v. Ohio Pacific Exp.,* 819 S.W.2d 338, 340 (Mo.banc 1991). "Courts look elsewhere for interpretation only when the meaning is ambiguous or would lead to an illogical result defeating the purpose of the legislature." *State ex rel. Md. Heights, etc. v. Campbell,* 736 S.W.2d 383, 387 (Mo.banc 1987).

A "subpoena" is defined as "a command to appear at a certain time and place to give testimony upon a certain matter." *M & M Management Corp.,* 897 S.W.2d at 653 (citing Black's Law Dictionary 1426 (6 th ed.1990)). A "subpoena duces tecum" has been defined as "[a] court process, initiated by a party in litigation, compelling production of certain specific documents and other items, material and relevant to facts in issue in a pending judicial proceeding, which documents and items are in custody and control of person or body served with process." Black's Law Dictionary 1426 (6 th ed.1990). Additionally, a "subpoena duces tecum" has also been defined as an instrument "requir[ing] production of books, papers and other things." *Id.* Finally, the word "require" is defined as "[t]o ask for authoritatively or imperatively," or to "direct, order, demand, instruct, command, claim, compel, request, need, exact." *M & M Management Corp.,* 897 S.W.2d at 653 (citing Black's Law Dictionary 1304 (6 th ed.1990)).

In our case, while the language of RSMo section 213.030.1(7) definitively gives the Commission the power to "require" the production of books, papers, records and other such materials during its investigations, we must determine if a subpoena duces tecum is the appropriate means of achieving such a result. Thus, we must ascertain whether the statutory language of RSMo section 213.030.1(7) creates the implication that the Commission has the power to subpoena documents and information during the investigation of discrimination complaints pursuant to RSMo section 213.030.1(7) of the MHRA, even before a notice of hearing is issued.

In our case, the 1992 legislative amendment to RSMo section 213.030.1(7) gave the Commission the power "to require the production" of books, papers, records, or other materials. One of the definitions of the word "require" is to compel. Thus, one interpretation of this amendment is that the Commission has the power to compel the production of books, papers, records or other materials. A subpoena duces tecum essentially compels the production of certain documents. Therefore, it is a reasonable interpretation of this amendment the legislature intended to grant Commission the power to issue investigative subpoenas duces tecum.

∎ Lake Holiday encourages this Court to follow the rationale in *State ex rel. City of Raytown v. Missouri Com'n on Human Rights*, No. 49805 (Mo.App.W.D. March 14, 1995). However, the Missouri Supreme Court later accepted transfer of that case. "The decision of the court of appeals in a case subsequently transferred is of no precedential effect." *Philmon v. Baum*, 865 S.W.2d 771, 774 (Mo.App. W.D.1993). Furthermore, while *Raytown* was pending before the Supreme Court, it was settled by the parties and subsequently dismissed as moot. Thus, the *Raytown* opinion is no longer of any precedential value and we are not bound to follow it.

Lake Holiday further argues the *M & M Management Corp.* court held the Commission had no authority, neither expressed nor implied, to issue an investigative subpoena. However, the *M & M Management Corp.* court's discussion of the Commission's authority was only to distinguish *Raytown* from *M & M Management Corp.*, which was decided around the same time. *M & M Management Corp.*, 897 S.W.2d at 654–55. Furthermore, the *M & M Management Corp.* court's discussion of *Raytown* arose in the context of dicta, and therefore is not binding on this court. Moreover, in reaching our decision, we are more compelled by the fact that the legislature amended RSMo section 213.030.1(7) to grant the Commission the power to require the production of books, papers, records or other materials than by the fact that the legislature did not expressly use the word "subpoena" in conferring that

new power. Therefore, Lake Holiday's argument is without merit.

Based on the foregoing, we hold under RSMo section 213.030.1(7), the Commission possesses the power to issue investigative subpoenas duces tecum in order to accomplish the legislative intent of requiring the production for examination of any books, papers, records, or other materials relating to any matter under investigation, even before notice of a hearing is issued. Accordingly, we reverse the judgment of the circuit court.

HOFF, J., and RICHARD B. TEITELMAN, J., concur.

